JOSEPH R. BASSETT *v.* PAUL SPOFFORD AND THOMAS TILESTON.

The plaintiff sold goods to C., to be paid for on delivery after their arrival in New York. On their arrival in New York, C., on the pretense that he desired to examine the goods, induced the plaintiff's agent to give him, for that purpose, the carrier's receipt for the goods. Upon the receipt thus obtained the carrier delivered the goods to C., who forthwith put them on board the defendants' vessel consigned to Havana. The plaintiff's agent learned the fact the next day, and on the following day, and a few hours before the sailing of the defendants' vessel, he demanded the goods from the defendants, and offered to pay the freight and to indemnify them in a bond for double the value of the goods. The defendants refused to unship the goods, unless indemnified in the sum of $50,000, as it would necessitate moving a large part of the cargo, and delay the voyage a day or two.

*Held,* 1. That the delivery of the carrier's receipt to C. was not, under the circumstances, a delivery of the goods to him, nor a waiver of payment therefor, so as to pass the title.

2. That as it was through the incautious act of the plaintiff's agent that C. was able to get possession of the goods, and to ship them on board of the defendants' vessel, the latter, being innocent parties, were not bound to detain their vessel and unload their cargo to enable the plaintiff to recover his goods, unless they were indemnified for any loss or expense they might thereby incur.

3. The burden of proof was upon the defendants to show that the indemnity tendered by the plaintiff was insufficient to cover the loss or damage they would incur by the delay, &c., and having failed to show it, they were liable to the plaintiff as for a conversion of the goods.

4. The issuing, by the defendants, of a bill of lading of the goods, furnishes no defense to such an action.

APPEAL by the defendants from a judgment entered upon the verdict of a jury found by the direction of the court at trial term.

The action was brought to recover the possession of 200 dozen ladies' shoes, of the value of $2,200. The defendants, who were owners of the steamship Eagle, bound from New York to Havana, for a defence, averred that they received the shoes from J. R. Carreras, on board of the steamer, and that they had rightfully issued a bill of lading for the goods prior to any demand from the plaintiff. It appeared on the trial, that in December, 1862, Carreras negotiated with the plaintiff, at Boston, for the shoes, and was to pay cash for them on delivery at New York. The plaintiff shipped them to New York, in charge of his clerk, J. T. Moore, with instructions to deliver the goods on receiving the money. On his arrival at New York, Moore called on Carreras, told him he had the goods, and asked for the money. Carreras said he would pay at a later hour, and that he would like to examine the goods, and Moore gave him the railroad receipt, to enable him to examine the goods. Moore, afterwards learning the shoes had been put on the Eagle, went to that vessel and notified the purser and captain, and demanded the goods. The defendant, Tileston, on a second demand, refused to deliver, and demanded a bond of $50,000. The plaintiff offered to give a bond of $5,000. The bill of lading was not produced, nor were the ship's bills of lading produced. Some of the witnesses, however, testified that a bill of lading had been issued, but to whom was not stated, and defendant's record of bills of lading was produced, containing a copy of the bill alleged to have been issued. On the conclusion of the testimony, counsel for the defendants requested the court to charge the jury that the plaintiff, by delivering the receipt for the goods to Carreras, gave to him the apparent right of ownership; so that the defendants, after receiving the goods, were entitled to hold them until the plaintiff indemnified them against all damage to which they might have been subjected in consequence of what they had done, acting upon the faith of that delivery. Also, that the plaintiff, by his negligence in delivering the receipt for the goods to Carreras, was estopped from recovering in this action; and that the question of negligence was one of fact, which the defendants had a right to have submitted to the jury.

The court refused both requests, and directed the jury to find a verdict for the plaintiff for the value of the property and damages for its detention.

The defendants appealed.

*Gilbert Dean*, for appellants.

*H. M. Whitehead*, and *A. J. Vanderpoel*, for respondent.

BY THE COURT.—DALY, F. J.—The sale of the goods was for cash, payable on delivery ; and where such is the condition, payment and delivery are simultaneous acts and no title passes until the goods are paid for, unless payment at the time of the delivery has been waived (*Leven* v. *Smith*, 1 Denio, 573 ; *Baker* v. *Bourcicault*, 1 Daly, 26, 27). The delivery to Carreras, by the plaintiff's agent, of the railroad receipt, was merely for the purpose of enabling the former to examine the goods, which were then in four cases upon the pier, it being customary in New York to allow the vendee to open the cases and examine the goods. The delivery of the receipt to Carreras for such a purpose was not a delivery to him of the property, and the title remained in the plaintiff. There was nothing to show that either the plaintiff, or his agent, intended to waive the condition of payment upon delivery ; but, on the contrary, the agent insisted throughout upon payment, and had no authority to waive it.

The delivery of the railroad receipt, however, enabled Carreras to obtain possession of the goods, and to ship them in the defendants' vessel for Havana. The possession of this receipt by Carreras was not necessary to enable him to examine the cases. He was a person of whom neither the plaintiff, nor the plaintiff's agent, knew anything, and if he desired to examine the cases, the agent should have gone with him to the railroad pier and afforded him the opportunity. Instead of doing this, the agent delivered into his possession the railroad receipt, which was equivalent to the transfer of a bill of lading, and thereby enabled him to possess himself of the property, and carry into effect his fraudulent design. The receipt was ob-

tained on the 14th of December.   On the 15th, the agent learned that Carreras had obtained the goods, and had shipped them, and it was not until the next day that a demand for them was made upon the defendants, which was renewed on the following day, the 17th, the day of the departure of the steamer. When the demand was made on the part of the plaintiff, the four cases were in the forward hold of the vessel, and so far beneath the cargo that they could not be taken out without delaying the departure of the steamer for a day or two, a matter of more than ordinary moment, as the vessel carried the United States mail. "Every man," says Gould, J., in *Cartwright* v. *Wilmerding* (24 N. Y. 529), "is bound to take care not to select an agent who will do acts to injure other persons," and as it was through the incautious act of the plaintiff's agent that Carreras was able to get possession of the goods, and to ship them on board of the defendants' vessel, the defendants, being innocent parties, were not required to detain their steamer, and unload their cargo, that the plaintiff might get back his goods, unless they were indemnified for any loss or expense they might thereby incur.

The plaintiff's attorney offered to give them a bond of indemnity in $5,000, the value of the goods being $2,200, and to pay the freight ; but the defendants demanded a bond in $50,000. The attorney said he thought it was exorbitant, and that his client could not give it, upon which one of the defendants replied, " You can go on board the steamer and get the goods if you can."   He tried to do so, but the cases were then covered up in the back part of the hold, and he was told by the men having charge of the freighting, that it would take a day or two days to get at them.   The steamer left that day at 3 o'clock P. M.

The plaintiff's right to the property was indisputable, and as the plaintiff had offered to pay the freight and to give a bond of indemnity in $5,000, it was incumbent upon the defendants to show that a bond in that amount would not cover the loss or expense to which they would be subject.   It was for them to show what loss or damage they would be put to by the detention of the vessel and the unshipping of the goods, for

that was a matter peculiarly within their own knowledge, and it is a familiar rule of evidence that where such is the case the onus is shifted from the plaintiff to the defendant. They positively refused to comply with the demand made on the part of the plaintiff, unless they received a bond of indemnity in $50,000, and it was for them to give, at least, some evidence to show that they required no more than what was reasonable under the circumstances. They gave no evidence upon this head whatever.

The defendants relied upon the trial upon the fact that they had given bills of lading for the goods to Carreras, and had thereby obligated themselves to deliver them at Havana to the consignee named in the bills or to his assigns. The judge held that there was not sufficient proof of the issuing of bills of lading, and the defendants insist that as there was some evidence of the fact, which was received without objection, it was a question not for the court, but for the jury. But the point was wholly immaterial; for, conceding that they did give bills of lading to the person from whom they received the goods, and in whose name they were shipped, it would be no defence as against the true owner. As they were fully advised of the circumstances under which the goods came into their possession as carriers, they were bound to restore them to the rightful owner; and if, after being duly notified, they delivered them to the consignee because they had given bills of lading, they did so at their peril. The consignee, even if he had made advances, *bonâ fide*, upon the bills, could not, under such circumstances, claim the goods as against the owner. "If a person, without authority from me," says the Chancellor in *Saltus* v. *Everitt* (20 Wend. 272) "ship my goods and take a bill of lading in his own name, he cannot, by assigning that bill of lading to another, divest my title to the property." "The universal and fundamental principle of our law of personal property," says Verplanck, senator, in the same case, "is, that no man can be divested of his property without his own consent, and consequently the honest purchaser under a defective title cannot hold against the true proprietor;" and after an extensive and admirable review of the law upon this head, he re-

marks, " there is no case to be found, or any reason, or any analogy any where suggested in the books, which would go to show that the real owner could be concluded by a bill of lading, *not given by* himself, but by some third person, erroneously or fraudulently.   The assignment of the bill of lading conveys, not an absolute right to ·the goods, but the right and title merely of the actual consignor, who is alone bound by it."   And as Carreras, the consignor in the present case, had no title, he could transfer none to his consignee, or that consignee's assigns. This rule, though it may operate injuriously upon innocent parties, acting *bonâ fide*, serves, as the learned senator remarks, the just interests of commerce, whilst it imposes upon the resident merchant the responsibility of taking care with whom he deals, and teaches him a lesson of wholesome caution.   The case is different where the owner is the consignor and delivers over the bills of lading, though under circumstances that would entitle him to reclaim the property upon the ground of fraud ; for in such a case, a holder. of the bills, who had *bonâ fide* made advances upon them, or given other valuable consideration for them, would be protected, because he relies, as he is entitled to do, upon the act of the consignor.

The judgment should be affirmed.